UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SHEN-SAMPAS,<br><br>    Plaintiff,<br><br>vs.<br><br>UCSF AND REGENTS OF UNIV OF CALIFORNIA; MICHAEL RABOW; JUSTIN SEWELL; AND BECCA WALLACE<br><br>    Defendants | Case No.: 3.25-cv-01916-RFL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS** |

Hon. Rita F. Lin

Date: January 27, 2026 at 10:00 a.m.

Courtroom 15, 18th Floor

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **Tuesday, January 27, 2026, at 10:00 a.m.**, or as soon thereafter as the matter may be heard in **Courtroom 15** of the above-entitled Court, located at **450 Golden Gate Avenue, San Francisco, CA 94102**, **Plaintiff John Shen-Sampas** will and hereby does move for **terminating sanctions** against Defendants **The Regents of the University of California** and **UCSF** under **Federal Rule of Civil Procedure 37(c)(1)**, **Rule 37(b)(2)** (as incorporated), **Civil Local Rule 37-4**, and the Court's **inherent authority** to address **fraud on the Court**.

This Motion is based on the grounds that:

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 1

1. Defendants have **knowingly withheld and concealed material evidence** they were required to disclose under Rule 26(a) and Rule 26(e);

2. Defendants **submitted false statements** in discovery responses and declarations;

3. Defendants' counsel, Mr. Michael Bruno, **falsely certified and recertified** discovery responses and declarations;

4. Defendants' misconduct constitutes **fraud on the Court** under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995), *Anheuser-Busch v. Nat'l Beverage Distrib.*, 69 F.3d 337 (9th Cir. 1995), and *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006); and

5. The resulting prejudice to Plaintiff renders a fair trial **impossible**, and **lesser sanctions would be ineffective** in light of the pattern of intentional deception.

Pursuant to **Civil L.R. 7-8(a)**, Plaintiff files this Motion "**as soon as practicable after learning of the conduct at issue**" and submits the supporting evidence and declarations required by **Civil L.R. 37-4**.

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court enter:

1. **Terminating sanctions** against Defendants by:

(a) **Striking Defendants' Answer**, or

(b) **Entering default judgment**, or

(c) **Striking Defendants' defenses** to Plaintiff's Title IX retaliation claim;

and, in the alternative:

2.  **Issue-preclusion sanctions** barring Defendants from dispute

    (a) that Plaintiff engaged in protected activity,

    (b) that Defendants were aware of such activity before taking adverse action, and

    (c) that the proffered reasons for expulsion were pretextual;

3.  **Evidentiary sanctions** excluding any evidence that Defendants failed to disclose or supplement under Rule 26(e);

4.  **Adverse inference instructions** based on Defendants' willful suppression and falsification of evidence;

5.  **Monetary sanctions**, including reasonable expenses and fees caused by Defendants' misconduct (detailed in the accompanying declaration under L.R. 37-4(b)(3)); and

6.  Any further relief the Court deems necessary to remedy Defendants' fraud and to preserve the integrity of the judicial process.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This is not a routine discovery dispute. It is a case of calculated fraud perpetrated by a public institution to conceal retaliation against a student who engaged in protected activities of filing a Title IX sexual harassment claims against his mentor, Dr. Mark Ratcliffe.

Defendants have engaged in a scheme to suppress evidence that proves the central allegation of this lawsuit, intent to retaliate. Vice Chancellor (then Dean) John Davis intentionally and selectively disclosed his communications with Dr. Mark Ratcliffe up to October 2, 2024 and omitted the rest of the communications between the two from October 2 to

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 3

November 20 to manufacture the impression that his communications with Dr. Ratcliffe are strictly limited to the time before Davis was made aware of Plaintiff's Title IX complaint against Dr. Ratcliffe on November 10. Defendants withheld the email thread initiated by Dean Davis on November 20 to connect Dr. Ratcliffe to Becca Wallace, who was in charge of the formal disciplinary proceeding against Plaintiff, in order to manufacture the impression that Ms. Wallace conducted her investigation independently without any outside influence, especially from Dean Davis.  Defendants' actions were not inadvertent; they were **deliberate and calculated** to distort the factual record and obstruct Plaintiff's ability to prove retaliation.  They contradict Defendants' own Initial Disclosures, which identified this specific correspondence as relevant. Furthermore, Defense Counsel falsely certified on September 3, 2025 and recertified the completeness of this production on November 14, 2025, and reaffirmed that falsehood during a meet-and-confer on November 20, 2025.

      The Ninth Circuit requires terminating sanctions where, as here, "**a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.**" *Anheuser-Busch*, 69 F.3d at 348. Lesser sanctions would not suffice.

## II. LEGAL STANDARD

### A. Rule 37(c)(1): Failure to Disclose or Supplement

      Rule 37(c)(1) provides that if a party fails to disclose required information under Rule 26(a) or fails to supplement under Rule 26(e), "**the party is not allowed to use that

information or witness… unless the failure was substantially justified or harmless,**" and the Court **may impose any sanctions listed in Rule 37(b)(2)(A)**, including:

- Striking pleadings
- Dismissing the action
- Rendering default judgment
- Issue or evidence preclusion

### B. Court's Inherent Power: Fraud on the Court

Federal courts possess inherent authority to sanction litigants for fraud on the court. *Chambers*, 501 U.S. at 44. The Ninth Circuit imposes terminating sanctions where a party:

1. Engages in **intentional conduct**,
2. That is aimed at **deception of the Court**, and
3. **Undermines the integrity** of judicial proceedings.

See *Pumphrey*, *Leon*, *Anheuser-Busch*.

## II. FACTUAL BACKGROUND

### A. Defendants Identified the Evidence as Relevant in May 2025

In their Initial Disclosures served on May 22, 2025, Defendants explicitly identified **"Correspondence between John Davis and Mark Ratcliffe"** as documents they intended to use to support their defenses. This admission proves that Defendants reviewed and recognized the relevance of this communication channel at the outset of litigation.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 5

### B. The "Sanitized" Production and "False Ending"

Despite this admission, Defendants' actual production was fraudulently truncated. Defendants produced email threads titled "Brief Chat?" dating up to October 2, 2024. However, they withheld the subsequent 16 messages in that exact same thread and three more emails between the two spanning from October 2 to November 20, 2024, hence creating the "False Ending" that Dean Davis and Dr. Ratcliffe had communications only up to October 2 and the two had no communication after November 10, 2024 when Plaintiff filed his Title IX sexual harassment claims against Dr. Ratcliffe..

Defendants withheld the *entirety* of the email thread initiated by Dean Davis on November 20, 2024, which connected the accused harasser (Ratcliffe) to the disciplinary officer (Wallace) . This suppression concealed the "hand-off" from Davis to Wallace for the purpose of retaliating against Plaintiff.

### C. The Discovery of the Fraud and Defense Counsel's False Certification

Shortly after receiving Defendants' Responses to Request for Production on September 3, 2025, Plaintiff emailed Defendants' Counsel, Mr. Bruno, with concerns that the production was not complete. Mr. Bruno did not respond to Plaintiff. On November 10, 2025, Plaintiff again raised the issue by stating "I looked through both POD's and I don't believe this is complete, especially on the internal communications." On November 13, 2025, Plaintiff obtained the withheld emails through an institutional OPHD record review. On November 14, 2025, Plaintiff once again asked Defense Counsel Michael Bruno to look into Defendants' production. On the same day, Mr. Bruno responded by recertifying that Defendants had conducted a "reasonable

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 6

search" and produced all responsive documents. On November 20, 2025, Plaintiff, Mr. Bruno and Ms. Romero had a live meet and confer. During that meeting, Mr. Bruno stated that after his November 14 email his client did another search and found three responsive documents and would immediately produce them. The three documents are not related to the 45 withheld emails. During that call, Plaintiff asked again whether Defendants have completed a reasonable research and produced all the responsive documents with those three responsive documents. Mr. Bruno answered "Yes."

## III. LEGAL ARGUMENT

**A.  The Court Should Impose Terminating Sanctions Under Its Inherent Powers.**

Federal courts have the inherent power to dismiss an action when a party has engaged in bad faith conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

In the Ninth Circuit, "fraud on the court" justifies terminating sanctions where there is an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995) . In *Pumphrey*, the Court found that a "scheme to defraud" was established through the use of "misleading, inaccurate, and incomplete responses to discovery requests... and the failure to correct the false impression created by [the initial production]."

Defendants' conduct mirrors *Pumphrey*. They admitted knowledge of the documents in their Initial Disclosures but then engaged in a "False Ending Strategy" to hide the incriminating

portions. This "scheme to defraud" corrupts the integrity of the trial because it prevents the Plaintiff from presenting the "smoking gun" evidence of retaliation.

### B. Sanctions Are Mandatory Under Rule 26(g).

FRCP 26(g) requires an attorney to certify that a "reasonable inquiry" has been made. Sanctions are mandatory for violations. *Fed. R. Civ. P. 26(g)(3)*.

Mr. Bruno certified and recertified twice a production as "complete" that omitted 45 critical emails from the central decision-makers. Given that these emails were available to the University's own OPHD office , Mr. Bruno's failure to produce them constitutes either gross negligence or willful participation in the client's fraud.

In this entire sequence of events, Plaintiff has given Defendants and their counsel ample opportunities to correct their omission and yet Defendants and their counsel kept doubling down on their false certification. Defendants' counsel, Ms. Romero, further argued, after being informed of the fraudulent behavior, that Plaintiff didn't fulfill the meet and confer requirement because Plaintiff did not let Defendants' counsel know during the meet and confer that he had already discovered the withheld emails. Such argument belies the ignorance of counsel's ethic duties. In no circumstance is Plaintiff obligated to inform Defendants' counsel of his knowledge of their fraudulent behavior. But Plaintiff tried his best to give Defendants' counsel the opportunities to correct the record to no avail. Ms. Romero further argued that because the discovery deadline has not reached, Defendants would have time to supplement their responses. This argument misunderstands Rule 26(e). A party may not wait until after being caught to supplement. Rule 26(e) requires supplementation **in a timely manner**, not at the party's strategic convenience. Courts repeatedly reject the notion that a party may engage in concealment simple
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 8

because the discovery cutoff has not yet passed. Defendants has had possession of those emails since January 2025. It is reasonable to draw the conclusion that if they had not been caught of concealing them, they would never disclose them.

### C. The Violation Was Willful and Bad Faith.

The selectivity of the omission proves intent. The fact that Defendants produced the innocent part of the communications between Davis and Ratclife while deleting the pertinent rest that pinpoints at the intent to retaliate demonstrates a calculated decision to deceive the Court. Defendants were fully aware of the gravity of the email among Davis, Ratcliffe and Wallace, because it is the classic "smoking gun" evidence of retaliation. Wallace, should she be truly independent, would have reached her own conclusion on whether Dr. Ratcliffe should be engaged in the disciplinary proceeding against Plaintiff. The introduction between Ratcliffe and Wallace made by Dean Davis sends a clear signal to Wallace that Ratcliffe should be fully believed to discredit Plaintiff. Therefore, the notion that Wallace conducted an independent and fair investigation is nothing but an illusion, which is what Defendants wanted to create.

### D. Sanctions Are Also Warranted Under Rule 37(e).

Even if Defendants argue that the emails were not "withheld" but "overlooked", Rule 37(e) authorizes sanctions where a party fails to take reasonable steps to preserve relevant ESI. Here UCSF's OPHD preserved the emails internally, but the litigation team failed to include them in production, demonstrating a breakdown in preservation that warrants sanctions.

**E. Scale of Concealment Cannot Be Determined Without a Forensic Examination of Defendants' ESI Systems.**

The 45 withheld emails represent only the portion of the concealment that Plaintiff was able to uncover **by chance**, through a restricted OPHD institutional record review on November 13, 2025. The concealment uncovered to date is therefore not the *ceiling* of Defendants' misconduct—it is merely the *floor*. Without a forensic-level inspection of Defendants' ESI repositories, metadata logs, custodial archives, and search-term audit trails, it is **impossible** to know how many additional responsive documents remain suppressed.

Defendants' conduct raises profound concerns regarding the **systemic integrity** of their discovery process. They produced a selectively truncated email thread, removed the incriminating middle and end of that chain, omitted an entirely separate thread showing the accused harasser being funneled to the disciplinary officer, and then certified—multiple times—that production was complete. This pattern is not consistent with an isolated oversight; it is consistent with a **deliberate filtering of ESI** designed to create a false exculpatory narrative.

Federal courts have long recognized that where a party is caught concealing materials central to liability, there is a substantial risk that **other documents have also been withheld**, and the *absence* of a complete record is itself strong evidence of bad faith. in *Anheuser-Busch*, the court emphasized that "it is appropriate to presume that where documents relevant to the merits of the litigation have been concealed the deception casts doubt on the concealing party's case. Here too, Defendants' selective omissions raise the specter of **additional undisclosed ESI**. Therefore, the presence of one concealed thread of high probative value strongly suggests the **possibility of more undisclosed ESI that Plaintiff cannot access without Court intervention**.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 10

This uncertainty caused by Defendants' fraud is itself a form of prejudice. As the Ninth Circuit has held, when a party's discovery violations make it **impossible to know the true scope of suppressed evidence**, the Court may impose terminating sanctions because the judicial process cannot function when the record has been corrupted at its source. See *Pumphrey*, 62 F.3d at 1131.

### F. Plaintiff Has Suffered Irreparable Prejudice.

The concealment is not harmless. Had these documents been disclosed as required in January 2025 during Plaintiff's appeals to UCSF's appeals board, Plaintiff could have used them to raise the point of retaliation before the Appeals Board, and sought immediate injunctive relief in this Court to prevent his dismissal in March 2025. Because the dismissal has already occurred and Plaintiff has lost his residency match at NYU, the harm is irreversible. No lesser sanction can restore the *status quo ante*.

Defendants' concealment also prejudiced Plaintiff's ability to conduct discovery in this case. Plaintiff relied on Defendants' false certification of completeness when preparing his discovery strategies. The "sanitized" version of the Davis-Ratcliffe thread, the missing Davis-Ratcliffe-Wallace thread, and the unknown scale of Defendants' concealment short of a forensic search deprived Plaintiff of essential impeachment and causation evidence during a critical phase of the litigation. Courts consistently find prejudice where a party conceals documents central to motive and intent.

The unknown and unknowable scale of Defendants' concealment—revealed only after Plaintiff independently uncovered concealed materials—strongly supports the imposition of

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS PURSUANT TO FRCP 37(C)(1), 37(C)(2), 37(E) 26(G), AND THE COURT'S INHERENT POWERS - 11

terminating sanctions. Lesser sanctions cannot cure the structural prejudice caused by the compromised integrity of Defendants' entire ESI collection.

**IV. CONCLUSION**

    Plaintiff recognizes that terminating sanctions are extraordinary. However, the Ninth Circuit has repeatedly held they are appropriate where a party intentionally conceals evidence central to liability, and where lesser sanctions cannot cure the prejudice. For the foregoing reasons, Plaintiff respectfully requests that the Court grant terminating sanctions, or in the alternative, issue preclusion, evidentiary sanctions, adverse inference instructions, and monetary sanctions.

Respectfully submitted,

Dated: December 4, 2025

                                            *John Shen-Sampas*
                                            John Shen-Sampas
                                            In Pro Per